## Steel's Appeal.  Kulp's Estate.

1. The Orphans' Court, upon the petition of the widow has jurisdiction to award an inquest to make partition of the real estate of an intestate between the widow and the sole heir of the intestate, or between the widow and the alienee of the heir, and may proceed to decree a sale, and under it to secure the widow's interest upon the property by making it a charge thereon in the hands of the purchaser.

2. A mortgage or other encumbrance placed upon the premises by the heir or his alienee, after the death of the intestate, cannot affect the title passing under the Orphans' Court sale.

February 6th 1878.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Orphans' Court of *Philadelphia county :* Of January Term 1878, No. 116.

Appeal of Robert Steel from the decree of the court requiring him to make specific performance of his contract as a purchaser at Orphans' Court sale under certain proceedings in partition.

Abraham Kulp died intestate in July 1870, leaving a widow, Sarah R. Kulp, and one child, Sarah A., married to Nathaniel A. Large.  At his death he was seised of a messuage and tract of land in Germantown, containing about twelve acres.  On the 28th of June 1873, Large and his wife conveyed the premises to one Bruner, who, by deed bearing the same date, re-conveyed them to Large himself.   In February 1876, the widow and administratrix, Sarah R. Kulp, presented a petition to the Orphans' Court, setting forth the foregoing facts, and praying for an inquest to make partition of the premises between her and Large.   The court ordered an inquest of partition, who made return that the premises could not be parted or divided without spoiling, and valued the same at $18,000, and the widow's interest at $6000, which return was duly confirmed by it, and a rule granted to accept or refuse. Large excepted to so much of the return of the inquisition as

assumed to pay the amount of the widow's dower. On the 8th of July 1876, the court dismissed this exception, and confirmed the return absolutely; and after reciting that Large, the owner, had neglected to appear, either to accept or refusé, the court granted an order of sale in the usual form, with a provision that one-third of the purchase-money should remain charged on the premises during the life of the widow, the interest thereon to be paid to her.. The premises, under this order, were exposed to public sale on the 24th day of April 1877, when Steel, the appellant, became the purchaser thereof for the sum of $9200.

On the 29th of September 1877, the widow filed a petition, setting forth these facts, and praying for a decree for specific performance against the appellant, who, on the 27th of October 1877, filed his answer, setting forth that the premises were subject to a mortgage for $11,000, given by Nathaniel S. Large to Henry B. Brown, trustee, one for $1000, given by him to Sarah R. Kulp, certain judgments against Nathaniel S. Large, a judgment against Sarah R. Kulp, and the taxes for 1876 and 1877, which encumbrances far exceeded the purchase-money. These encumbrances the appellant submitted were not discharged by the sale, first as to the mortgages, by reason of the Act of Assembly, which expressly preserved their lien; second, because the court had no jurisdiction to make the order of sale under the circumstances. He averred, however, that if the encumbrances could be paid or released he was willing to complete his purchase.

To this the petitioner replied, first, alleging that the mortgages were discharged by the sale, by reason of the fact that they were not created by the intestate, but by the grantee of the heir; and, second, averring jurisdiction in the court.

On the 8th of December 1877, the cause coming on to be heard on the petition, answer and replication, the court decided in favor of the petitioner, and decreed specific performance, from which the respondent appealed to this court.

*Henry Wharton*, for appellant.—The question is the simple one, whether in proceedings in partition instituted by a widow the court has jurisdiction to go on and order a sale in case of refusal to take at a valuation. We contend that the Act of March 29th 1832, Purd. Dig. 433, pl. 136, does not authorize anything more than a valuation and charge of the widow's interest on the land. What purpose can be served by a sale under these circumstances? There is but one heir, and the only result is, after the conversion, to leave the widow's share still charged on the land, as it would have been if no sale had been made. Why the needless expense of a sale, merely to do what the sole heir could have done himself?

The Act of 1832 is clear that though the widow may initiate the proceedings, as her interest is pro tanto involved, where no parti-

[Steel's Appeal.]

tion can be made in kind her agency ceases: Painter *v.* Henderson, 7 Barr, 50.

*George W. Thorn,* for appellee.—We contend that under the provisions of the Act of 1832, the Orphans' Court has jurisdiction to award an inquest to make partition between the widow and the alienee of the heir-at-law upon the petition of the widow.    There may be a partition between the widow and an only child: Bishop's Appeal, 7 W. & S. 251.    And the alienee of the heir may have partition: Stewart's Appeal, 7 P. F. Smith 241.    It was competent also for the court to order the sale of the premises when the alienee of the heir refused to accept them at the valuation fixed by the inquest: Act 29th of March 1832, sect 42, Purd. Dig. 440, pl. 170; Act of 25th of April 1850, Purd. Dig. 441, pl. 174. Painter *v.* Henderson is not in point.    It determines merely that the widow cannot elect to take land at the valuation.

It may be conceded that under the authorities a widow may not take land at the appraisement, but how does that affect her right to recover her share in her husband's estate, given to her by the statute? Her estate, under our law, is not dower, but an interest in lieu of it, under the Statute of Distributions.    How may she enforce her right?    The statute says by petition to the Orphans' Court for an inquest to make partition of her husband's real estate, and if that cannot be divided without prejudice to or spoiling the whole, then it shall be sold, and her share charged on the land, and the interest thereof paid to her annually during life, and at her decease the principal to the parties legally entitled thereto.

The judgment of the Supreme Court was entered, February 18th 1878,

PER CURIAM.—The Act of March 29th 1832 expressly gave to the widow of an intestate the power to apply to the Orphans' Court of the proper county for partition of the real estate of the decedent.    It has been held that the widow's share may be set out in kind to her for life; though she cannot accept under an appraisement or a partition without allotment to her: Bishop's Appeal, 7 W. & S. 251; Painter *v.* Henderson, 7 Barr 48.    Yet, having the right to apply for partition, it is clear, jurisdiction taken under her petition is not lost.    Her right to petition exists, where there is but a single lineal descendant: Bishop's Appeal, *supra.*    The proceeding, therefore, must be prosecuted to the end, so as to give to her the right she seeks to have enforced, to wit: a charge upon the real estate in the hands of the heir, or, if he will not accept, in the hands of a purchaser under an order of sale.    If this cannot be effected, her remedy by petition for partition would be useless and illusory; for it is seldom an estate can be so divided as to set apart a portion of it to the widow for life.    Nor does it make

[Steel's Appeal.]

any difference, since the Act of 20th April 1869, whether the decedent died testate or intestate, a widow refusing to take under the will being authorized to proceed for her share under the intestate law, in lieu of dower: 1 Brightly 530, pl. 10, 11.    This act expressly directs the proceeding to go on to a *sale*, under her application, thus confirming the interpretation given to the Act of 1832. See, also, Neeld's Appeal, 20 P. F. Smith 113; Coates's Appeal, 29 Id. 235.   It is clear the Orphans' Court had jurisdiction and power to decree a sale, and under it to secure the widow's interest upon the property, according to the provisions of the Act of 1832.

It is evident that a mortgage or other encumbrance placed by the heir or his alienee, after the death of the intestate, upon the premises, cannot affect the title passing under the Orphans' Court sale. The law makes express provision for a distribution of the proceeds of the sale among lien creditors.

> Decree affirmed, at the costs of the appellant, and the appeal dismissed.